Argued April 10, reversed with instructions May 2, petition for
rehearing denied May 29, 1962

# VOLMER v. VOLMER

371 P. 2d 70

*LaVerne M. Johnson,* Corvallis, argued the cause for appellant. On the brief were Huston, Thomas & Johnson, Corvallis.

*James W. Walton,* Corvallis, argued the cause for respondent. On the brief were Ringo & Walton, Corvallis.

Before MCALLISTER, Chief Justice, and ROSSMAN, PERRY and GOODWIN, Justices.

GOODWIN, J.

This is an appeal by the defendant husband from a decree of divorce granted his wife.

Before a court of this state may grant a divorce, a plaintiff must plead and prove that he has been an "inhabitant" of this state for at least one year immediately before the filing of the complaint. ORS 107.060. The statutory word "inhabitant" has been held to mean domiciliary. *Zimmerman v. Zimmerman,* 175 Or 585, 590-591, 155 P2d 293 (1945).

The husband is an officer of the United States Army, stationed in Corvallis in connection with the reserve-officer-training program at Oregon State University. He entered the military service from Pennsylvania, and received his commission through the United States Military Academy. As a professional soldier, his assignments have taken him to a number of army posts within as well as outside the United States. At all times, for military purposes, he has listed Clairton, Pennsylvania, as his permanent address. After their marriage, the parties lived together for a time in Trieste, Italy, and in Georgia and Vermont. During their marriage they also lived apart from time to time.

■ The parties lived together in Corvallis from November of 1958 until the husband moved out of the family home in September of 1960. During that time, the wife's domicile was that of her husband, at least in the absence of proof that she acquired a separate domicile. *Miller v. Miller,* 67 Or 359, 136 P 15 (1913) (alternative holding); Restatement, Conflict of Laws § 27 (1934).

■■ After the parties separated in 1960, the wife no doubt could have established a domicile separate

from that of her husband. Restatement, Conflict of Laws § 28 (1934), particularly § 28, comment *a* (Supp. 1948) ; see *Miller v. Miller,* supra (alternative holding). However, she testified that, as of the time immediately before her husband left home, she would have gone with him to another station if he had received such orders and wanted her to do so. Thus, the wife, in effect, admitted that she had not formed an intention to establish a separate domicile before her husband left their home. That event occurred during the month before the filing of the complaint on October 4, 1960. Therefore, the wife's domicile for the principal part of the year prior to her suit for divorce must be considered to be that of her husband, at least until she produces additional evidence supporting her contention that she had acquired a separate domicile.

■ The wife claims that her registration to vote in Oregon constitutes such additional evidence. (She registered the day after her complaint was filed.) She argues that her registration is evidence of an Oregon domicile which had existed for at least the preceding six months, because the election law requires six months' residence in Oregon before one may register. Cf. ORS 247.410. She then asks the court to work back another six months by reversing the effect of ORS 41.360 (32) (presumption that a state of affairs continues to exist). This is an exercise in which we decline to participate. As noted by the court in *Miller v. Miller,* 67 Or at 366-367, the act of registering to vote often is self-serving and, standing alone, is entitled to little weight. Even if registration was sufficient proof of the acquisition of a separate domicile in Oregon for the six months preceding the complaint, that would not help her in the case at bar. Since she can not show a separate domicile for a year, her suit

must be dismissed unless she can prove that her husband's domicile was in Oregon for the necessary year. As we have seen, her domicile was that of her husband until she acquired a separate domicile of her own. We turn, then, to the question of the husband's domicile.

■ The capacity of a member of the armed forces to acquire a new domicile during a tour of military duty has been recognized in this state. *Zimmerman v. Zimmerman,* 175 Or at 607. The husband in the case at bar could have acquired a domicile in Oregon at any time during his tour of duty here if he formed the requisite intent to do so. *Zimmerman v. Zimmerman,* supra at 591-593; Restatement, Conflict of Laws §§ 15-16, 18-21 (1934). In the case of a soldier ordered to a post in this state, however, the fact of residence here, standing alone, whether he lives on or off the military post, is not evidence of the intent necessary for the acquisition of a new domicile. *Zimmerman v. Zimmerman,* supra (government quarters); *Beasley v. Beasley,* 93 NH 447, 43 A2d 154 (1945) (apparently private quarters). Local pride notwithstanding, a soldier's sojourn in this state under military orders is not voluntary. Therefore, there must be some evidence of intent beyond mere physical presence within the state.

■ Further, the ordinary conduct of a person residing in this state incident to a military assignment here does not constitute sufficient evidence of the necessary domiciliary intent. To be relevant, conduct must be probative of intent, and not merely an incident of living in a given place. The wife in the case at bar relies upon certain behavior by the husband as proof of the requisite intent. She lists the opening of an account with a local credit union, an Oregon motor vehicle registration, and an attempt by the husband to obtain an Oregon driver's license as showing the state

of mind usually associated with the choosing of a home.

■ Insofar as the evidence of a financial transaction with a local credit union was concerned, neither party added any explanation to the fact that an account was opened. We are left entirely in the dark as to the meaning of this equivocal conduct. For all the record shows, the husband may have had a similar account at each of his previous stations. At the time of trial he had, for example, a similar account in Vermont.

Motor-vehicle registration may or may not have a bearing upon domiciliary intent, depending upon all the facts. In the case at bar, nothing was said about motor-vehicle registration except that when the former registration, which was in France, expired, the husband registered his automobile with the Oregon department of motor vehicles. There was undisputed testimony that he had also registered motor vehicles in Georgia. When asked why he registered his automobile in Oregon, the husband replied that he thought a service man could register his automobile where he was employed. While it is not necessary to a decision of this case to construe all the Oregon statutes which have a bearing upon motor-vehicle registration, we believe that the definition of "nonresident" in ORS 481.040 (2) when read together with the provision of ORS 481.155 (2) that "a nonresident owner * * * who is engaged in any gainful employment in this state is authorized to operate a motor vehicle * * * until the expiration of the registration [formerly in effect]" sufficiently shows that the mere registration of a motor vehicle can not be taken as evidence of intent vis-a-vis domicile. The same considerations apply to the evidentiary value of an application for an Oregon driver's license which the husband admitted

he had made some three months prior to the commencement of the suit. Under the definition of "nonresident" found in ORS 482.020 (1), the husband's gainful employment in this state may well have led him to believe that he should have an Oregon driver's license. We do not decide whether his view of the matter was the correct one, but certainly there is nothing in the statutory scheme concerning drivers' licenses to suggest that the act of applying for one constitutes proof even of residence, to say nothing of domicile. In the absence, as there is in the case at bar, of evidence that the husband desired to obtain an Oregon registration notwithstanding a belief that it was not required by law, such equivocal conduct cannot be viewed as evidence of domiciliary intent. Finally, the application for an Oregon driver's license was so soon before the commencement of the suit that it could be of no evidentiary value to the plaintiff in any event.

The husband testified that he did not intend that Oregon would be his permanent abode, but rather he regarded Pennsylvania as his permanent home. Like the wife's registration to vote, this statement by the husband is self-serving. Unlike the wife's registration, however, it is supported by the fact that defendant has always (so far as the record indicates) considered Pennsylvania as his permanent home.

It is clear that at the time of his entrance into this state in 1957 the husband was not domiciled in Oregon. We need not decide now where his former domicile was, but wherever it was, it continued until he acquired a new domicile. Restatement, Conflict of Laws § 15, comment b (1934); see also ORS 41.360 (32) (continuation of existing state of affairs). The only evidence of any weight which indicates that the husband intended to acquire a domicile in this state is his own

registration for voting purposes. This took place three days after his wife sued him for divorce, and two days after she had registered to vote. The husband's voting registration is, in effect, an admission against his interest. Obviously, it cannot be treated as self-serving. However, even if we were to assume that the husband's registration to vote justifies an inference of domiciliary intent as of a date six months before he signed the declaration for voting purposes, this inference still would not aid the wife's case. There is no evidence of an intent to become a domiciliary of this state prior to a date six months before he registered to vote. Consequently, there is a failure of proof that the husband changed his domicile early enough to be of help to his wife's case if, indeed, he did so at all. The wife's domicile being dependent upon that of the husband, she likewise was not a domiciliary of this state for the necessary time. Accordingly, as the one-year requirement of ORS 107.060 has not been met, the court below was without jurisdiction to enter the decree.

Decree reversed with instructions to dismiss the suit. Neither party to recover costs.